In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 14-2912, 14-3071

CITADEL SECURITIES, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CHICAGO BOARD OPTIONS EXCHANGE, INC., *et al.*,

*Defendants-Appellees*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-CV-05833 — **Robert W. Gettleman**, *Judge*.

ARGUED NOVEMBER 12, 2015 — DECIDED DECEMBER, 11 2015

Before BAUER, FLAUM, and MANION, *Circuit Judges*.

FLAUM, *Circuit Judge*. Plaintiffs Citadel Securities, LLC, et al., sued defendants Chicago Board Options Exchange, Inc., et al., in Illinois state court, seeking to recover fees they claim were improperly charged to and paid by plaintiffs to defendants under defendants' "payment for order flow" programs. Defendants removed the case to federal district court. The district court dismissed the case for lack of subject matter jurisdiction based on plaintiffs' failure to exhaust admin-

istrative remedies. Plaintiffs appeal the district court's dismissal of the case as well as the denial of their motion to remand. We affirm.

## I. Background

Defendants are national securities exchanges registered with the U.S. Securities and Exchange Commission ("SEC").[1] They operate as self-regulatory organizations ("SROs") that regulate markets in conformance with securities laws under the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* (1934) ("Exchange Act"). The Exchange Act requires exchanges to adopt rules governing the conduct and administration of the exchanges and their members. *See* 15 U.S.C. §§ 78f(b), 78s(b). Specifically, the rules of the exchange must "provide for the equitable allocation of reasonable dues, fees, and other charges among its members and issuers and other persons using its facilities." § 78f(b)(4). The SEC has broad authority to amend the rules of SROs. *See* § 78s(c).

Plaintiffs are securities firms and members of the defendant exchanges.[2] They operate as "market makers" under the exchanges' rules. Market makers compete for customer order flow by displaying buy and sell quotations for particular stocks.

Between at least January 2004 and June 2011, each defendant charged "payment for order flow" ("PFOF") fees.

---

[1] Defendants are: Chicago Board Options Exchange, Inc.; International Securities Exchange, LLC; NASDAQ OMX PHLX; NYSE ARCA, Inc.; and NYSE MKT LLC.

[2] Plaintiffs are: Citadel Securities, LLC; Group One Trading LP; Ronin Capital, LLC; Susquehanna Securities; and Susquehanna Investment Group.

PFOF is an arrangement by which a broker receives payment from a market maker in exchange for sending order flow to them. These fees are imposed to attract order flow to a market, thereby increasing liquidity in that market. Each defendant exchange imposes PFOF fees on a market maker when a trade is made for a "customer"; however, these fees are not imposed for proprietary "house trades," where a firm trades on its own behalf.

Defendants have adopted rules creating the PFOF programs, as required under the Exchange Act. According to the SEC, the rules creating the PFOF programs are "designed to ensure that market makers that may trade with customers on the exchange contribute to the cost of attracting that order flow." Competitive Developments in the Options Markets, 69 Fed. Reg. 6,124, 6,129 (Feb. 9, 2004).

We briefly note the origins of PFOF fees in order to place this case in historical context. PFOF fees recently became commonplace due to the advent of "multiple listing." *See id.* at 6,128–29. Until 1999, most actively traded options were listed on only one exchange. *Id.* In 1989, the SEC adopted Exchange Act Rule 19c-5, which promoted the listing of options on more than one exchange, enhancing competition among options exchanges. *Id.* at 6,125. The SEC has noted that PFOF "arrangements principally benefit intermediaries in the first instance, which may or may not pass on those benefits to their customers." *Id.* at 6,128. The SEC has also expressed concern that PFOF fees may create a conflict of interest between exchanges' own interests as profit-making entities and their regulatory responsibilities. *Id.* at 6,130.

Plaintiffs allege that between 2004 and 2011 defendants charged PFOF fees on millions of orders not properly subject

to those fees. They claim that a broker-dealer—which remains unidentified, is referred to by the parties only as the "Subject Firm," and is not a defendant in this case—incorrectly marked plaintiffs' stock option orders, resulting in payment of PFOF fees in contravention of various exchange rules. Upon discovering the Subject Firm's errors, defendants entered into stipulations and letters of consent whereby the Subject Firm paid them penalties and all previously uncollected transaction fees due on non-customer orders. Plaintiffs seek restitution or recovery from defendants of all fees that were allegedly mischarged.

Plaintiffs sued defendants in the Circuit Court of Cook County, Illinois. Defendants then removed the case to federal district court. Plaintiffs moved to remand to state court, claiming that no federal question was presented. The district court denied plaintiffs' motion to remand, finding that jurisdiction under § 78aa was proper.

Defendants then moved to dismiss for: lack of subject matter jurisdiction based on failure to exhaust administrative remedies, absolute immunity, lack of private right of action, and failure to state a claim. On August 4, 2014, the district court found that plaintiffs had failed to exhaust their administrative remedies and dismissed the case without prejudice for lack of subject matter jurisdiction. Plaintiffs appeal.

## II. Discussion

### A. Failure to Exhaust Administrative Remedies

We first turn to plaintiffs' argument that the district court erred in dismissing the suit. In general, we review de novo a district court's grant of a motion to dismiss for lack of sub-

ject matter jurisdiction. *Shawnee Trail Conservancy v. U.S. Dep't of Agric.*, 222 F.3d 383, 385 (7th Cir. 2000). However, the district court based its dismissal on plaintiffs' failure to exhaust administrative remedies. We have held that "the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court and may be disturbed on appeal only when there has been a clear abuse of discretion." *Id.* at 389 (citation and internal quotation marks omitted). We "accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff[s]." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993).

The district court observed that the Exchange Act provides a comprehensive administrative review process for decisions rendered by exchanges. The court explained that final rulings issued by an exchange are subject to administrative review by the SEC. Looking to the terms of the statute, the district court also noted that an aggrieved party dissatisfied with the SEC's determination can obtain further review from a federal appellate court. Ultimately, the district court concluded that plaintiffs had failed to demonstrate that they have no meaningful administrative remedy.

Plaintiffs present two main arguments on appeal. First, they argue that because defendants acted outside of their regulatory function and solely in their private capacity as for-profit entities, there is no need for exhaustion of remedies before the SEC. Second, plaintiffs argue that exhaustion is not required because the SEC cannot provide adequate relief.

*1. Application of the Exhaustion Requirement*

We agree with the district court that plaintiffs seek to enforce defendants' own rules promulgated under the Exchange Act. Plaintiffs claim that PFOF fees serve purely a private function and are not created pursuant to any regulatory authority, thus the exhaustion requirement does not apply. We are not convinced by this argument. Section 78s(h)(1) authorizes the SEC to "censure or impose limitations upon the activities, functions, and operations of" a national security exchange if it "finds, on the record after notice and opportunity for hearing, that [the exchange] has violated or is unable to comply with any provision of this chapter, the rules or regulations thereunder, or *its own rules* or without reasonable justification or excuse has failed to enforce compliance … ." *Id.* (emphasis added).

Given that the plain language of the Exchange Act calls for SEC review of plaintiffs' allegations of improper PFOF fees, the district court did not abuse its discretion in holding that plaintiffs are required to exhaust administrative remedies. There is little question that the PFOF fees are imposed pursuant to defendants' own rules: Defendants announced the PFOF fees as "proposed rule changes" published in the Federal Register.[3] The fees became effective upon announcement and remained in place because the SEC did not take any action to abrogate them. *See* § 78s(b)(3)(A)(ii). Con-

---

[3] Exchanges may use rules to impose fees under the Exchange Act. § 78f(b)(4) ("The rules of the exchange provide for the equitable allocation of reasonable dues, fees, and other charges among its members and issuers and other persons using its facilities.").

sequently, PFOF fees are rules with which defendants must comply, subject to SEC enforcement.

Moreover, we are not persuaded by the case law plaintiffs present to show that rules imposing PFOF fees fall outside of defendants' regulatory function. Plaintiffs rely heavily on *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 428, 452–53 (S.D.N.Y. 2013), where the district court acknowledged changes wrought by the widespread transformation of financial exchanges from non-profit mutual companies to for-profit, publicly listed organizations (known as "demutualization"). Specifically, the court identified the potential for conflict between exchanges' profit motive and their regulatory duties. *Id.* at 453. The *Facebook* court raised important concerns about the application of "blanket protection for exchanges when they fail to exercise due care in their pursuits of profit," but it did so in the context of questions raised about SRO immunity. *Id.* at 453–54. The *Facebook* court held that the owners and officers of a stock exchange were not entitled to SRO immunity from various investor claims. *Id.* at 454.

Defendants correctly note that immunity is a different issue than administrative exhaustion. The question of SRO immunity is focused on the nature of defendants' action. By contrast, exhaustion relates to the reach of the SEC's authority to review the action. Plaintiffs attempt to import the immunity analysis and apply it in the exhaustion context. The immunity inquiry asks whether the defendant's conduct is primarily regulatory or private in nature. But the exhaustion inquiry is jurisdictional rather than content-based. What matters for exhaustion is not the nature of defendants' ac-

tion, but whether the action involves defendants' own rules pursuant to the Exchange Act.

Plaintiffs also cite *Weissman v. Nat'l Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1299 (11th Cir. 2007) (en banc), for the proposition that an exchange may be sued in court for private conduct. However, as in *Facebook*, *Weissman* examines the regulatory/private distinction in the context of immunity rather than exhaustion. *Id.* at 1295–96. Thus, the logic of *Weissman* does not excuse defendants' obligation to exhaust SEC remedies before bringing suit in federal district court.

Finally, plaintiffs rely on an improper reading of an unreported case, *Opulent Fund v. Nasdaq Stock Mkt., Inc.*, C-07-03683 RMW, 2007 WL 3010573, at *5 (N.D. Cal. Oct. 12, 2007), to argue that the exhaustion of remedies is not required where a complaint targets private activity. Plaintiffs' interpretation of *Opulent* not only conflates the immunity and exhaustion analyses, but also conflicts with the statutory language of § 78s(h)(1). Section 78s(h)(1) states that the SEC's jurisdiction covers claims against an SRO for violating "its own rules"; the regulatory or private nature of the action does not determine the SEC's jurisdictional reach. What matters is whether defendants' are operating under their own rules, as in the case at hand.

### 2. Failure to Waive the Exhaustion Requirement

We also reject plaintiffs' argument that exhaustion is unnecessary because administrative relief is unavailable. Generally, a district court is unable to waive a statutorily-mandated exhaustion requirement. *See Shawnee Trail Conservancy*, 222 F.3d at 389. However, a court may waive the exhaustion requirement where exhaustion is futile. *See Smith*

*v. Blue Cross & Blue Shield United of Wisconsin*, 959 F.2d 655, 658–59 (7th Cir. 1992). The futility exception is limited to situations where the attempt to exhaust administrative remedies would be useless or inadequate to prevent irreparable harm. *See id.* at 659 ("In order to come under the futility exception, [plaintiffs] must show that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision."); *PennMont Sec. v. Frucher*, 586 F.3d 242, 246 (3rd Cir. 2009) ("[An] 'extraordinary' exception[] to the exhaustion requirement [is] … 'when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury … .'" (citation omitted)); *Tesoro Refining and Marketing Co. v. F.E.R.C.*, 552 F.3d 868, 874 (D.C. Cir. 2009) ("The futility exception is … limited to situations when resort to administrative remedies [would be] clearly useless." (alteration in original) (internal citation and quotation marks omitted)).

Plaintiffs have not clearly shown that the SEC's administrative procedure is futile or inadequate to prevent irreparable injury. While there is no obvious path to the monetary compensation plaintiffs seek, it is impossible to say whether relief is available since plaintiffs have made no attempt to bring the matter before the SEC. We can envision situations in which reliance on administrative remedies would be clearly futile and SEC review might not be required, but plaintiffs have not convinced us that this is such a case.

In its current form, the Exchange Act provides a range of administrative remedies for those aggrieved by an exchange's action. Section 78s(h)(1) gives the SEC authority to "censure or impose limitations upon the activities, functions, and operations" of an exchange, although there is no men-

tion of damages or restitution. Other sections of the Exchange Act explicitly provide for monetary penalties. For instance, § 78u-2 gives the SEC authority to assess monetary penalties in proceedings instituted pursuant to §§ 78o(b)(4), 78o(b)(6), 78o-6, 78o-4, 78o-5, 78o-7, or 78q-1. And § 78u(d)(3) gives the SEC general authority to pursue monetary penalties in civil actions. In other words, monetary compensation is at least a possibility.

In sum, the district court did not abuse its discretion in dismissing plaintiffs' case for failure to exhaust administrative remedies.

### 3. *Dismissal Without Prejudice*

On cross-appeal, defendants argue that the district court should have dismissed plaintiffs' suit with prejudice for three independently sufficient reasons: absolute immunity, preemption of claims, and failure to state a claim under Illinois law. Defendants ask us to modify the judgment to make the dismissal of this suit with prejudice.

We decline to do so. In dismissing for lack of subject matter jurisdiction, the district court properly elided these three arguments. A dismissal for lack of subject matter jurisdiction is not a decision on the merits, and thus cannot be a dismissal with prejudice. *See, e.g.*, *Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006). Because we affirm the district court's dismissal for lack of subject matter jurisdiction, we will not proceed to the merits of the case.

### B. Motion for Remand

Plaintiffs' final argument on appeal is that removal was improper and we should remand to state court. We review de novo a district court's decision regarding the propriety of

removal. *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 891 (7th Cir. 2007).

According to plaintiffs, PFOF programs serve purely a private function and are not created pursuant to any regulatory authority delegated by the SEC. Therefore, no federal regulatory interest is at issue. We disagree and affirm the district court's denial of plaintiffs' motion to remand.

A state claim may be removed to federal court only if the federal court has original jurisdiction, unless Congress expressly provides otherwise. 28 U.S.C. § 1441(a); *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474 (1998). "[T]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet*, 522 U.S. at 475 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also* 28 U.S.C. § 1331. A case may not be removed on the basis of a federal defense. *Rivet*, 522 U.S. at 475. Additionally, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Id.* (citation and internal quotation marks omitted). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of the plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Id.* (citation omitted).

The district court properly found that removal was appropriate based on § 78aa, which gives district courts "exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions

at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." As discussed above, plaintiffs' complaint alleges that defendants violated their own rules—rules they are bound to comply with under § 78s(g)(1)—by improperly charging PFOF fees. Thus, removal was proper because the plain language of the Exchange Act establishes that federal courts have exclusive jurisdiction over actions seeking to interpret and enforce compliance with exchange rules or the Act itself.

The district court correctly determined that this case implicates a federal interest sufficiently substantial to establish federal subject matter jurisdiction. *See, e.g.*, *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 101 (2d Cir. 2001) (finding federal subject matter jurisdiction where an exchange failed to perform its statutory duty under federal law); *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1212 (9th Cir. 1998) (holding that "although [plaintiff's] theories are posited as state law claims," their viability depended on whether the SRO's "rules were violated," thereby triggering the exclusive jurisdiction provision of § 78aa). We therefore affirm the district court's denial of plaintiffs' motion to remand to state court.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.