In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-3423

CHICAGO BOARD OPTIONS EXCHANGE, INC.

*Petitioner,*

and

NASDAQ OMX PHLX, LLC,

*Intervening Petitioner,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Respondent,*

and

CITADEL SECURITIES, LLC, *et al.*

*Intervening Respondents.*

_____

Petition for Review of an Order of
the Securities and Exchange Commission.
No. 3-17189

_____

ARGUED MARCH 29, 2018 — DECIDED MAY 7, 2018

_____

Before BAUER, FLAUM, and MANION, *Circuit Judges*.

FLAUM, *Circuit Judge*. In *Citadel Securities, LLC v. Chicago Board Options Exchange, Inc.*, we held that "the district court did not abuse its discretion in dismissing [the] case [of certain securities firms] for failure to exhaust administrative remedies." 808 F.3d 694, 701 (7th Cir. 2015) [hereinafter *Citadel I*]. Following that decision, the securities firms filed a petition before the Securities and Exchange Commission ("SEC" or "Commission") seeking damages from various securities exchanges for improper fees. The SEC dismissed that petition for lack of jurisdiction. The securities exchanges now appeal that order. We affirm.

## I. Background

Following our decision in *Citadel I*,[1] certain securities firms (the "Market Makers")[2] filed a petition with the SEC. The petition alleged that over a ten-year period the Chicago Board

---

[1] We laid out the full history of this litigation in *Citadel I*. *See* 808 F.3d at 697–98. For purposes of this appeal, we focus primarily on the events subsequent to our decision in that case, providing additional background as necessary.

[2] A "market maker" is a "broker-dealer firm that accepts the risk of holding a certain number of shares of a particular security in order to facilitate trading in that security." Jaclyn Freeman, Note, *Limiting SRO Immunity to Mitigate Risky Behavior*, 12 J. on Telecomm. & High Tech. L. 193, 214 n.174 (2014) (citation omitted). "[M]arket makers create liquidity by being continuously willing to buy and sell the security in which they are making a market." *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 268 (3d Cir. 1998) (en banc). Relevant to this appeal, the Market Makers include: Citadel Securities, LLC; Ronin Capital, LLC; Susquehanna Securities; and Susquehanna Investment Group.

Options Exchange and Nasdaq (the "Exchanges")[3] "mis-charged the Market Makers potentially millions of dollars." Specifically, the Market Makers claimed that the Exchanges improperly imposed fees under Payment for Order Flow ("PFOF") programs.[4] The petition requested that the Commission compel the Exchanges to (1) "provide a full accounting" of the fees wrongly charged; and (2) award damages in that amount, or in the alternative, order disgorgement of the improperly charged fees.

On April 1, 2016, the SEC ordered briefing as to whether it had jurisdiction to review the Market Makers' petition. The Market Makers argued the "the Commission ha[d] no statutory authority to exercise jurisdiction over this matter." The

---

[3] The Exchanges are both national securities exchanges registered with the SEC. They operate as self-regulatory organizations ("SROs") and regulate markets in conformance with securities laws under the Exchange Act. *See Citadel I*, 808 F.3d at 697.

[4] As we explained in *Citadel I*:

PFOF is an arrangement by which a broker receives payment from a market maker in exchange for sending order flow to them. These fees are imposed to attract order flow to a market, thereby increasing liquidity in that market. [The Exchanges] impose[] PFOF fees on a market maker when a trade is made for a "customer"; however, these fees are not imposed for proprietary "house trades," where a firm trades on its own behalf.

[The Exchanges] have adopted rules creating the PFOF programs, as required under the Exchange Act. According to the SEC, the rules creating the PFOF programs are "designed to ensure that market makers that may trade with customers on the exchange contribute to the cost of attracting that order flow."

808 F.3d at 697 (quoting Competitive Developments in the Options Markets, 69 Fed. Reg. 6,124, 6,129 (Feb. 9, 2004)).

Exchanges, citing our decision in *Citadel I*, maintained the SEC had jurisdiction under Section 19(h)(1) of the Securities Exchange Act (the "Exchange Act") and the SEC's Rules of Practice because the petition sought a determination that the Exchanges had violated their own rules. The SEC acknowledged our conclusion in *Citadel I* that "the plain language of the Exchange Act calls for SEC review of plaintiffs' allegations of improper PFOF Fees," *see* 808 F.3d at 699, but nevertheless held that it lacked jurisdiction over the Market Makers' petition.

First, the SEC explained that Section 19(d) of the Exchange Act, which authorizes it to review allegations that a national exchange has unduly "prohibit[ed] or limit[ed] … access to services," *see* 15 U.S.C. § 78s(d)(1), did not apply to the Market Makers' petition. It determined that the petition did not allege that the Exchanges had denied or limited access to any service. It also stated that even if it had alleged such a claim, the petition sought damages, which was "incongruous with" the SEC's remedial authority under Section 19(d).

Second, the SEC declined to exercise jurisdiction over the petition under Section 19(h)(1). That provision permits the SEC to take regulatory action against an exchange when "in its opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of [the Exchange Act]." *Id.* § 78s(h)(1). The SEC reasoned that this text "exclusively authorizes … the Commission, in its discretion, to commence an administrative disciplinary action against an [exchange]," but "does not authorize claims by private parties." The SEC also determined that the provision only authorizes it "to suspend and/or impose limitations upon [an exchange] …, not to

award damages." Because the Market Makers are private parties seeking damages, the SEC held that it lacked jurisdiction under Section 19(h)(1).[5]

Next, in response to our statement in *Citadel I* that "sections of the Exchange Act explicitly provide for monetary penalties," *see* 800 F.3d at 701, the SEC concluded that the Exchange Act said nothing about its power to award damages in *private* actions. It noted that it was permitted to impose civil penalties and seek disgorgement under certain sections of the Act, but clarified that "civil money penalties … are not damages." Because it determined that the Market Makers' petition did not initiate a proceeding under any Exchange Act provision that permitted money penalties, it held it could not "provide 'monetary compensation' to the Market Makers."

Finally, the SEC noted that the mere fact that the dispute involved a rule overseen by the Commission did not provide it jurisdiction. As it explained, "[t]hat the fees at issue were imposed pursuant to rules subject to Commission review does not make the Commission the arbiter of any and all disputes about such fees or rules."

---

[5] The SEC further reasoned that even if it was "to commence a litigated proceeding under Section 19(h)(1), that litigation would not be an adversarial proceeding between the Market Makers and the Exchanges." It explained "[t]he parties to the proceeding would be the Exchanges and our Division of Enforcement, which would pursue claims against them, and the case initiating document would be our order instituting proceedings, not the Petition that the Market Makers have filed."

The CBOE appealed the SEC's order to this Court, and the Market Makers and Nasdaq intervened pursuant to Federal Rule of Appellate Procedure 15.[6]

## II. Discussion

### A.  Standing and Jurisdiction

15 U.S.C. § 78y(a)(1) provides that "[a] person aggrieved by a final order of the Commission entered pursuant to [the Exchange Act] may obtain review of the order" by filing a petition within sixty days in the appropriate United States Court of Appeals. The Market Makers argue that the SEC's July 2016 order did not "aggrieve" the CBOE and thus it has no standing to bring this appeal. We disagree.

"A party is 'aggrieved' by an order if the order results in an 'adverse effect in fact.'" *Richards v. NLRB.*, 702 F.3d 1010, 1014 (7th Cir. 2012) (quoting *Harrison Steel Castings, Co. v. NLRB*, 923 F.2d 542, 545 (7th Cir. 1991)); *see also Aggrieved*, Black's Law Dictionary (10th ed. 2014) (defining "aggrieved" as "having legal rights that are adversely affected; having been harmed by an infringement of legal rights"). "'As long as a charging party … gets less than he requested,' he is … aggrieved …." *Oil, Chem. & Atomic Workers Local Union No. 6-418 v. NLRB*, 694 F.2d 1289, 1294 (D.C. Cir. 1982) (per curiam) (alteration in original) (footnote omitted) (quoting *Chatham Mfg. Co. v. NLRB*, 404 F.2d 1116, 1118 (4th Cir. 1968)).

---

[6] Shortly after the Commission dismissed their petition, the Market Makers filed a third complaint in state court, again alleging that the Exchanges improperly charged them PFOF fees. The Exchanges removed that action to a federal district court, which stayed the action pending the resolution of this appeal.

Here, the SEC's decision results in an "adverse effect in fact" for the Exchanges. The Exchanges affirmatively requested the SEC to exercise jurisdiction over the petition. The SEC did not do so. In other words, the Exchanges got "less than [they] requested." *See id.* Thus, the CBOE is an "aggrieved party" and we have jurisdiction.

## B.  SEC Jurisdiction Over the Petition

We turn next to the central issue on appeal: whether the SEC has jurisdiction over the Market Makers' petition. The parties disagree about whether we must defer to the SEC's decision that it lacks jurisdiction under the Exchange Act. "When a court reviews an agency's construction of the statute it administers, it is confronted with two questions." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

> First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, … the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43 (footnotes omitted). This deference is applicable to "an agency's determination of its own jurisdiction." *City of Arlington, Tex. v. FCC*, 569 U.S. 290, 297, 305 (2013) (calling the

idea that an agency's interpretation as to the scope of jurisdiction receives no deference a "misconception").

We must first determine the "precise question" at issue. The SEC and Market Makers frame the issue as whether the Act grants the Commission jurisdiction to resolve a private-party dispute requesting the repayment of improper PFOF fees. The Exchanges frame the issue as whether the Act grants the SEC jurisdiction to determine whether an Exchange has violated its rules.

We agree with the SEC and Market Makers' framing of the precise issue. The formulation urged by the Exchanges—that this is a determination about whether the Exchanges violated their own rules—is overly simplistic. By stating the issue solely in terms of the underlying violation, the Exchanges fail to account for the parties involved or the relief sought. Furthermore, they ignore the very reason why the SEC determined it lacked jurisdiction. As the Commission explained, "the Petition alleges, in effect, a billing dispute" between two private parties, and it requests the SEC order the Exchanges to "pay damages to the Market Makers" for improperly charging them fees under their PFOF programs. Thus, the precise question before the SEC was whether it had jurisdiction over a petition brought by private parties seeking damages for an alleged rule violation. That is narrower than simply asking whether the Exchanges violated their own rules.

The Exchange Act does not speak to whether the SEC can adjudicate such a private party "billing dispute" seeking damages. Section 19(h)(1)'s authority to institute proceedings against an exchange for rule violations is entirely discretion-

ary and contains "no mention of damages or restitution." *Citadel I*, 808 F.3d at 701. Section 19(d) is similarly unhelpful. While it allows the SEC to adjudicate claims between two parties where a "person aggrieved" files a petition challenging the exchange's conduct, *see* 15 U.S.C. § 78s(d)(2), that authority extends only to limited circumstances not applicable here.[7] Finally, while the Act permits the SEC to impose civil penalties and disgorgement, it says nothing about the SEC's authority to issue money damages.

Because the Exchange Act does not speak to this issue, we consider whether the SEC's interpretation of the statute is reasonable. *Chevron*, 467 U.S. at 844. If so, we must accept it. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005) ("If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation.").

The SEC determined that neither Section 19(h)(1) nor Section 19(d) provide it jurisdiction over the petition. We believe such a finding is reasonable. First, Section 19(h)(1) provides the Commission only with discretionary authority to conduct an enforcement proceeding and sanction an exchange for a rule violation. The SEC sensibly concluded that the text "does not provide for Commission jurisdiction over lawsuits initi-

---

[7] The SEC can, for instance, review a national exchange decision that "imposes any final disciplinary sanction on any member …, denies membership or participation to any applicant, or prohibits or limits any person in respect to access to services offered by such organization or member thereof." 15 U.S.C. § 78s(d)(1).

ated by and between private parties." Second, the SEC reasonably found Section 19(d) did not provide it with jurisdiction because the Market Makers' petition did not seek relief under that provision, nor allege any limitation or prevention of access to services. The petition sought only an accounting of improper fees and a refund of those fees, which are not cognizable claims under Section 19(d).[8]

The Exchanges argue the SEC's holding is unreasonable because it conflicts with our decision in *Citadel I*. We disagree. In *Citadel I*, we held that the district court did not abuse its discretion in finding the Market Makers had not exhausted their administrative remedies. 808 F.3d at 701. We merely concluded that the Market Makers "ha[d] not *clearly shown* that the SEC's administrative procedure is futile or inadequate." *Id.* at 700 (emphasis added). Critically, however, we emphasized that "[w]e [could] envision situations in which reliance on administrative remedies would be clearly futile *and SEC review might not be required*, but plaintiffs *[had] not convinced us* that this is such a case." *Id.* (emphasis added). Thus, our statement that "the plain language of the Exchange Act calls for SEC review of plaintiffs' allegations of improper PFOF fees," *see id.* at 699, must be read in the context of that limited holding. Given the posture of the case, our holding addressed only the broad strokes of the Exchange Act in relation to PFOF rule violations, and not, as the Exchanges would have us believe, the particular nuances of SEC jurisdiction over specific petitions before the Board. In short, our opinion in *Citadel I* does

---

[8] Moreover, as the SEC noted, the petition would be time-barred because a party must appeal under Section 19(d) within thirty days. The Market Makers learned that the fees were mischarged in 2012, but only filed their petition in March 2016.

nothing to detract from the SEC's reasonable conclusion that the Exchange Act does not provide it jurisdiction to review the Market Makers' claims.

### III. Conclusion

For the foregoing reasons, we AFFIRM.