**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TREVOR MICHAEL SALIBA,<br>*Petitioner*,<br><br>v.<br><br>U.S. SECURITIES & EXCHANGE<br>COMMISSION,<br>*Respondent*. | No. 21-71114<br><br>SEC Nos.<br>3-18989<br>3-18990<br><br>OPINION |

On Petition for Review of an Order of the
Securities & Exchange Commission

Argued and Submitted June 7, 2022
Portland, Oregon

Filed August 31, 2022

Before: David M. Ebel,[*] William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Ebel

---

[*] The Honorable David M. Ebel, United States Circuit Judge for the
U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

# SUMMARY[**]

## Securities and Exchange Commission

The panel denied in part, and dismissed in part, a petition for review brought by Trevor Saliba challenging a determination by the U.S. Securities and Exchange Commission sustaining two industry bars imposed by the Financial Industry Regulatory Authority ("FINRA") against him and a separate finding that he violated FINRA Rules 8210 and 2010.

In 2011, NMS Capital Group, LLC, which was wholly owned by Saliba, purchased MCA Securities, LLC, and changed its name to NMS Capital Securities. MCA, now NMS Securities, was a member of FINRA, a securities industry self-regulatory organization registered with the SEC under Section 15A of the Securities Exchange Act of 1934. NMS Securities submitted a Continuing Member Application ("CMA") to request approval of the change in ownership. FINRA discovered that NMS Securities had failed to disclose that another registered investment advisor owned by Saliba, NMS Capital Asset Management, was being investigated by the SEC for deficiencies in its compliance with securities laws. FINRA imposed Interim Restrictions on NMS Securities. While the Interim Restrictions were in effect, Saliba signed agreements with investment banking clients on behalf of NMS Securities, and engaged in other activities. FINRA began an investigation into whether Saliba had violated the Interim Restrictions, and a FINRA panel found that Saliba had violated FINRA

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Rules 2010 and 8210. The SEC upheld FINRA's findings and conclusions as to two bars imposed as a result of Saliba's violations of the Interim Restrictions and participation in providing backdated compliance forms to FINRA. The SEC also sustained FINRA's findings that Saliba had violated FINRA Rules 8210 and 2010 by testifying falsely about and failing to produce his computers.

The panel applied the test from *Bennett v. Spear*, 520 U.S. 154 (1997), to determine whether the SEC's order was final. The panel held that because the court could review only a "final order" of the SEC under 15 U.S.C. § 78y(a), there was no jurisdiction to review whether the SEC had substantial evidence to find that Saliba violated FINRA Rules 8210 and 2010 by failing to produce and testify truthfully about his computers because the sanction for this violation was still pending before FINRA. However, the panel further held that the SEC's determinations concerning the sanction of two industry bars did constitute a final order for the purposes of establishing jurisdiction.

The panel denied Saliba's petition for review of the SEC's decision to affirm those two sanctions. Specifically, the panel held that the SEC did not abuse its discretion in upholding FINRA's imposition of a bar preventing Saliba from associating with FINRA member firms based on Saliba's violation of the Interim and Revised Restrictions and FINRA Rule 2010. Saliba waived his ability to challenge the SEC's finding that he violated FINRA Rule 2010 by violating the Interim Restrictions and Revised Restrictions when he failed to raise his argument before the SEC. The panel also held that the SEC did not abuse its discretion in upholding FINRA's imposition of a bar based on Saliba's admitted violation of FINRA Rule 2010 by backdating firm compliance documents. The SEC was

required to give deference to FINRA's findings, including its findings that NMS Securities's CCO Tabizon and Saliba's accounts were not credible. Furthermore, it was reasonable for the SEC to conclude that this was egregious conduct that warranted a bar to protect the public.

## COUNSEL

Alan M.Wolper (argued), Christiane McKnight, and Heidi E. VonderHeide, Ulmer & Berne LLP, Chicago, Illinois, for Petitioner.

Kerry J. Dingle (argued), Senior Litigation Counsel; Tracey A. Hardin, Assistant General Counsel; John W. Avery, Deputy Solicitor; Dan M. Berkovitz, General Counsel; Securities and Exchange Commission, Washington, D.C.; for Respondent.

## OPINION

EBEL, Circuit Judge:

Petitioner Trevor Saliba seeks review of a determination by the United States Securities and Exchange Commission ("the Commission") sustaining two industry bars imposed by the Financial Industry Regulatory Authority ("FINRA") against him and a separate finding that he violated FINRA Rules 8210 and 2010.

Because we may review only a "final order" of the Commission under 15 U.S.C. § 78y(a), we conclude that we lack jurisdiction to review whether the Commission had substantial evidence to find that Saliba violated FINRA

Rules 8210 and 2010 by failing to produce and testify truthfully about his computers because the sanction for this violation is still pending before FINRA. However, we further find that the Commission's determinations concerning the two industry bars do constitute a final order for the purposes of establishing jurisdiction, and we DENY Saliba's petition for review of the Commission's decision to affirm those sanctions.

## FACTUAL BACKGROUND

### A. Facts Relevant to CMA Process and Interim Restrictions

In 2011, NMS Capital Group, LLC, which was wholly owned by Trevor Saliba, purchased a firm known as MCA Securities, LLC ("MCA"), and changed its name to NMS Capital Securities ("NMS Securities"). MCA, now NMS Securities, was a member of FINRA, a securities industry self-regulatory organization registered with the Commission under Section 15A of the Securities Exchange Act of 1934. To comply with FINRA rules, NMS Securities submitted a Continuing Member Application ("CMA") to FINRA's Membership Application Program Group ("MAP") to request approval of the change in ownership. While considering the application, FINRA discovered that NMS Securities had failed to disclose that another registered investment advisor owned by Saliba, NMS Capital Asset Management, was being investigated by the Commission for deficiencies in its compliance with federal securities laws. Accordingly, FINRA determined that it "lack[ed] sufficient information at this stage of the application review process to determine whether the [f]irm meets each standard in NASD Rule 1014." As a result, on August 15, 2012, FINRA imposed "interim restrictions" on NMS Securities prohibiting the firm from (1) "[p]ermitting Trevor Saliba

from acting in any principal and/or supervisory capacity;" (2) "[a]dding any new lines of business[], offices or personnel;" and (3) "[c]onducting a securities business on behalf of any affiliated entity directly or indirectly owned or controlled . . . by Trevor Saliba."

Saliba sought clarification of the restrictions and requested a meeting with FINRA. At that meeting, Saliba expressed his desire to maintain some financial control of NMS Securities, and he informed FINRA that he wanted NMS Securities to hire additional operations and compliance personnel. On October 17, 2012, MAP amended the Interim Restrictions to permit Saliba to engage in certain limited principal activities ("Revised Restrictions"):

1. Mr. Saliba is permitted to act in a limited capacity with respect to supporting the following financial functions of the Firm: invoice approval, payment of bills/corporate expenses, check writing, personal contributions of operating capital to the Firm, and oversight of corporate budgeting. Such supporting role[s] would be subject to the oversight of the Firm's designated Financial and Operations Principal, Bradford R. Dooley (CRD 4308078), as appropriate; and

2. The Firm is permitted to add two (2) additional operational support personnel provided that such personnel will only be permitted to support Firm operations, compliance and supervision functions, and will not be permitted to serve in any type of marketing, sales or

business development capacity, or in any other capacity.

## B. Conduct at Issue

### i. Potential violations of the Interim Restrictions

Between August 30, 2012, and May 1, 2013—while the Interim Restrictions were in effect—Saliba signed engagement, placement, and selling agreements with investment banking clients on behalf of NMS Securities. These included placement agent agreements; fee agreements; engagement agreements; and a selected dealer agreement. Saliba signed these agreements as "Managing Director," "Senior Managing Director," "CEO," or "Chairman" of the firm. Saliba did not disclose to FINRA that he had signed these agreements.

Saliba also participated in certain hiring activities for NMS Securities. After the meeting with FINRA, Saliba proceeded to hire a new CEO and interviewed at least one other individual and negotiated regarding the individual's salary and performance bonus. Saliba also negotiated payouts and employment terms for a number of independent representatives hired by NMS Securities.

### ii. Backdated Compliance Documents

In April 2013, in a routine examination of NMS Securities unrelated to the Interim Restrictions, FINRA requested that the firm produce certain compliance forms, including attestations by registered representatives as to their most recent outside business activities and private securities transactions. NMS Securities retrieved and produced a majority of the responsive forms, but included in this production several February 2013 forms for certain

representatives that were backdated. The firm's former CCO, Richard Tabizon, and Saliba recreated the forms by having Saliba sign and backdate the forms to February 2013. Tabizon later testified that a FINRA officer gave them permission to do this, but FINRA did not find this testimony to be credible.

### iii. Saliba's Second Computer

On June 21, 2013, FINRA denied NMS Securities' CMA and began an investigation into whether Saliba had violated the Interim Restrictions. FINRA requested pursuant to FINRA Rule 8210 that NMS Securities produce "[a]ny and all computers and/or electronic storage devices" that Saliba used for NMS Securities business. Saliba produced a single laptop and testified that he had used only this particular laptop for NMS Securities business since 2012. Emails produced to FINRA later showed that Saliba purchased a second laptop in May 2013 and had it set up with NMS Securities files and software. Saliba had not produced this laptop. FINRA retained a digital forensics expert to examine the use of the NMS Securities laptop that had been produced. The expert's analysis showed that the laptop was used almost daily prior to the purchase of the second laptop, and its usage substantially declined after the purchase of the second laptop.

### C. Procedural History

On March 24, 2016, FINRA's Department of Enforcement filed a complaint against Saliba, alleging, among other things, that Saliba violated FINRA Rules 2010 and 8210 by violating the Interim Restrictions, testifying falsely about and failing to produce his second laptop, and backdating compliance forms. A FINRA hearing panel found that Saliba had committed the charged violations. The

panel imposed a single bar prohibiting Saliba from associating with any FINRA member firm in any capacity. The panel did not impose any fine or other monetary sanction.

Saliba appealed to the National Adjudicatory Counsel ("NAC"), FINRA's appellate forum for disciplinary matters. The NAC sustained the findings that Saliba violated each of the charged FINRA rules but modified the sanction in order to impose three separate bars (all prohibiting Saliba from associating with FINRA members) upon finding that Saliba's violations related to three separate subject matters: (1) his violation of the Interim Restrictions; (2) his false testimony regarding his computers, provision of falsified memos, and failure to respond completely to FINRA's information requests regarding his computers; and (3) his role in providing backdated compliance documents to FINRA. Saliba then appealed the NAC's findings to the Commission pursuant to the Exchange Act. 15 U.S.C. § 78s(d).

The Commission upheld FINRA's findings and conclusions as to the two bars imposed as a result of Saliba's violations of the Interim Restrictions and participation in providing backdated compliance forms to FINRA. The Commission also sustained FINRA's finding that Saliba had violated FINRA Rules 8210 and 2010 by testifying falsely regarding his computers and failing to produce his second computer, but remanded the corresponding sanction to FINRA because further fact-finding was required on one of the violations associated with this sanction, namely whether Saliba violated Rules 8210 and 2010 by providing falsified memos to FINRA. Saliba now challenges the Commission's findings upholding the two bars and the finding of a violation

of Rules 8210 and 2010 for testifying falsely about and failing to produce his computers.

## DISCUSSION

### A. Jurisdiction

Both parties contend that this Court has jurisdiction to consider all the issues raised by Saliba under the Exchange Act, which states:

> A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals . . . by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

15 U.S.C. § 78y(a)(1). Saliba timely filed a Petition for Review of the Commission's opinion within the sixty days afforded to him and has been "aggrieved" by the opinion as it has resulted in an "adverse effect in fact." *Chicago Bd. Options Exch., Inc. v. S.E.C.*, 889 F.3d 837, 840 (7th Cir. 2018). The jurisdictional question here is whether the Commission's opinion constitutes a "final order" within the meaning of the statute in light of the fact that the Commission's opinion affirmed two bars and remanded a third bar for further proceedings by FINRA. We conclude that the Commission's opinion is a final order as to the two industry bars sustained for Saliba's violations of FINRA Rule 2010 by defying the Interim Restrictions and backdating compliance forms; however, the Commission's opinion is not a final order as to its determination that Saliba violated FINRA Rules 8210 and 2010 by failing to produce

his computers, because the sanction for this violation has been remanded for further proceedings by FINRA.

Because we have little guidance from precedent specifically addressing this provision of the Exchange Act, we apply the two-pronged test from the Supreme Court's decision in *Bennett v. Spear*, 520 U.S. 154 (1997), to determine whether the Commission's order is "final." While *Bennett* concerned a "final agency action" under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, we have previously held that the *Bennett* test may govern the meaning of the word "final" for other analytically equivalent federal jurisdictional statutes outside the APA. *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000) ("'[F]inal agency action' under the APA is analytically equivalent to a 'final order' under the Hobbs Act. Thus, *Bennett* governs our understanding of 'final order' for the purposes of the Hobbs Act as well." (citation omitted)); *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (importing the meaning of "final" under the APA to "final action" under the Clean Air Act).

Under the *Bennett* test, an agency action is "final" if the action (1) "mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78 (citations and quotations omitted). In applying this test, we look to factors such as whether the action "amounts to a definitive statement of the agency's position," whether it "has a direct and immediate effect on the day-to-day operations" of the subject party, and if "'immediate compliance [with the terms] is expected.'" *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)

(alteration in original) (quoting *Indus. Customers of Nw. Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)). We also "focus on the practical and legal effects of the agency action: '[T]he finality element must be interpreted in a pragmatic and flexible manner.'" *Id.* (quoting *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1504 (9th Cir. 1995)).

> **i.   The Commission's opinion is a final order as to the two FINRA Rule 2010 violations for Saliba's violation of the Interim Restrictions and backdating compliance forms and the corresponding bars.**

Applying *Bennett*, the Commission's finding that Saliba violated FINRA rules and is permanently barred from associating from FINRA members marks the "consummation of the decision-making process," as to the two FINRA Rule 2010 violations and the corresponding bars because there is nothing left for the Commission to decide and the Commission will not reconsider its decision without a reversal from this Court. Additionally, "legal consequences flow" from the Commission's opinion on these issues as Saliba is currently barred from associating with FINRA firms. These bars have "a direct and immediate effect on the day-to-day operations" of his firm. Further, the fact that one of the three sanctions reviewed in the opinion has been remanded does not render the Commission's entire opinion not final. This Court has recognized that "the APA defines 'order' broadly as 'the whole or part of a final disposition . . . of an agency in a matter other than rulemaking.'" *S. Cal. Aerial Advertisers' Ass'n v. Fed. Aviation Admin.*, 881 F.2d 672, 675 (9th Cir. 1989) (omission in original) (quoting 5 U.S.C. § 551(6)). This means that the issues for which the Commission issued

sanctions may be considered a "final order" on their own as part of a final disposition.

As a practical matter, the Commission correctly notes that our failure to review these sanctions now could foreclose appellate review of these two bars in the future. FINRA has broad discretion over disciplinary issues and could decide to simply discontinue its pursuit of the remanded sanction. *See generally Wedbush Secs.*, Exchange Act Release No. 78568, 2016 WL 4258143, at \*16 (Aug. 12, 2016) (discussing FINRA's "broad prosecutorial discretion"). In such a scenario, the Commission would lack the authority to issue a subsequent reviewable final order because the Commission can only review actions by FINRA specified in 15 U.S.C. § 78s(d)(1), such as imposing an additional "final disciplinary sanction" on Saliba. 15 U.S.C. § 78s(d)(2). Thus, if we were to decline to review these bars in this appeal, and FINRA declines to take further action, Saliba would remain twice barred without the possibility of judicial review of those bars. As we interpret the *Bennett* test for finality "in a pragmatic and flexible manner," *Or. Nat. Desert Ass'n*, 465 F.3d at 982, this further reinforces our conclusion that the Commission's decision to affirm these two sanctions constitutes a final order that we have jurisdiction to review.[1]

---

[1] This conclusion also comports with analogy to the exception to the final judgment rule allowing for the interlocutory appeal of injunctions as Saliba's bar can be analogized to an injunction. *See* 28 U.S.C. § 1292(a)(1).

### ii. We lack jurisdiction to review the Commission's finding that Saliba violated FINRA Rules 8210 and 2010 by failing to produce and testify truthfully about his computers.

As to the remaining issue—whether Saliba violated FINRA Rules 8210 and 2010 by falsely testifying about and failing to produce his computer—the jurisdictional analysis is different because the corresponding sanction relating to that violation was remanded by the Commission. Nevertheless, the parties both maintain that this issue is still part of a "final order." Applying the *Bennett* test, the parties conclude that the Commission's opinion on this issue is the consummation of the decision-making process because the Commission will not reconsider whether this violation occurred. This, however, ignores the fact that a sanction for this violation is still being deliberated by FINRA. "[T]he final agency action requirement ensures that courts do not intrude on the agency's turf and thereby meddle in the agency's ongoing deliberations." *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 578 (9th Cir. 2019). If we were to review and overturn this finding of a violation, FINRA will have to scrap part of its deliberative process on the sanction, which is the kind of disturbance the statute seeks to avoid.

Additionally, absent an attached sanction, the Commission's finding that Saliba violated Rules 8210 and 2010 by itself has no legal consequences for him and no impact on the day-to-day operation of his firm. *See Abbs v. Sullivan*, 963 F.2d 918, 926 (7th Cir. 1992) (Posner, J.) ("Ordinarily," a final agency action "means a final order imposing some sort of sanction."). The Commission's only argument that legal consequences flow from the mere finding of a violation is that it may later be a factor weighing

against another FINRA member's application to associate with Saliba. FINRA rules allow a member firm to apply to associate with a barred individual such as Saliba. To do so, the applicant firm must demonstrate that the proposed association "is consistent with the public interest and the protection of investors," often by proposing a supervisory plan and other protections. *See By-Laws of the Corporation*, Fin. Indus. Reg. Auth., art. III, § 3(d), https://www.finra.org/rules-guidance/rulebooks/corporate-organization/laws-corporation/printable; *see also Frank Kufrovich*, Exchange Act Release No. 45437, 2002 WL 215446, at *4–5 (Feb. 13, 2002). The Commission's finding that Saliba committed the computer violation (in addition to the violations for which he has already been sanctioned) could potentially be relevant to FINRA's consideration of such an application because the Commission has held that "the failure to provide truthful responses to requests for information renders the violator presumptively unfit for employment in the securities industry." *Geoffrey Ortiz*, Exchange Act Release No. 58416, 2008 WL 3891311, at *9 (Aug. 22, 2008).

While this does present a potential scenario where the finding of a violation alone could affect Saliba, this scenario is speculative and insufficient to constitute "legal consequences" under *Bennett*. *See Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 595 (9th Cir. 2008) (greater risk of future increased fines "does not constitute a *legal* consequence" for judicial review purposes). Currently, it is unknown if such an application from a FINRA member firm is pending or if Saliba expects to be associated with one. Additionally, even if such an application was currently pending, the effect of Saliba's computer violation in the ensuing FINRA analysis is unclear; it would not be dispositive in FINRA's review of

the application and could have almost no weight in that determination, especially considering that Saliba has two other violations that have warranted lifetime bars.  Thus, we remain unconvinced that legal consequences flow from the finding of a mere violation of FINRA rules relating to the nonproduction of a computer and failure to testify truthfully. Under the *Bennett* test, the Commission's decision on this issue is not final.**[2]**  This Court may still consider this issue in a future appeal if Saliba timely petitions this Court from a new final order of the Commission affirming a sanction for this issue.

Lastly, the Commission argues that under the most natural reading of the statute's phrase "obtain review of the order," the order would include all of the issues in the Commission's opinion.  Aple Supp. Br. at 8 (citing *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1066 (2019) (collecting cases "choosing the 'more natural' reading of a statute")).  We disagree that this is the most natural reading of the statute.  The Commission essentially urges the conclusion that if some of the issues in an order are final, we can hear every single issue in an order—even those that are not final.  This seems contrary to the statute.  If one truly wanted to adopt this reading, the correct outcome would be

---

**[2]** The Commission also argues that not reviewing this issue will conflict with our policy disfavoring piecemeal appellate review, *Cheng v. Comm'r*, 878 F.2d 306, 310 (9th Cir. 1989), because it could lead to a later appeal from a new final order regarding the sanction for the violation of Rules 8210 and 2010.  But even if we did review all of the issues before us, piecemeal appellate review could still result if Saliba later appealed a new final order sustaining a sanction for the computer violation.  The only way to avoid piecemeal appellate review would be to decline to hear any of the issues in the case until the final sanction is resolved.  Such a result is intolerable given the finality of the two industry bars that currently affect Saliba.

that if one of the issues is not final, then the entire order is not final.  As discussed earlier, this Court has previously recognized that "the APA defines 'order' broadly as 'the whole or part of a final disposition . . . of an agency in a matter other than rulemaking.'"  *S. Cal. Aerial Advertisers' Ass'n*, 881 F.2d at 675 (omission in original) (quoting 5 U.S.C. § 551(6)).  Thus, we disagree with the Commission and believe that we are free to review those issues that are final and lack jurisdiction to hear the issues that are not final.

In short, we exercise jurisdiction over Saliba's challenges to the two industry bars for his violations of FINRA Rule 2010 for backdating compliance forms and for violating the Interim Restrictions.  We lack jurisdiction to review whether substantial evidence supports the Commission's determination that Saliba violated FINRA Rules 8210 and 2010 by testifying falsely about and failing to produce his computers.

**B. The Commission did not abuse its discretion in upholding FINRA's imposition of a bar preventing Saliba from associating with FINRA member firms based on Saliba's violations of the Interim and Revised Restrictions and FINRA Rule 2010.**

**i. Saliba waived his ability to challenge the Commission's finding that he violated FINRA Rule 2010 by violating the Interim Restrictions and Revised Restrictions.**

Saliba first argues that the Commission lacked substantial evidence to find that he violated FINRA Rule 2010 by violating the Interim Restrictions and Revised Restrictions (collectively, "the Restrictions") because Saliba mistakenly believed he was complying with the Revised Restrictions in good faith.  We conclude Saliba waived this

argument by failing to urge this argument before the Commission. According to the Exchange Act, this Court may not consider an "objection to an order or rule of the Commission . . . unless it was urged before the Commission or there was reasonable ground for failure to do so." 15 U.S.C. § 78y(c)(1). In Saliba's brief before the Commission, he conceded the violation of Rule 2010 and only argued against the resulting sanction due to mitigating factors. He offers no reasonable grounds for his failure to raise this issue.

### ii. In light of this violation of FINRA Rule 2010, the Commission did not abuse its discretion in imposing a bar.

Saliba next argues that the Commission abused its discretion in upholding a bar prohibiting him from associating with FINRA member firms for his violation of the Interim and Revised Restrictions and Rule 2010. We disagree and deny Saliba's petition for review of the Commission's decision to affirm the sanction. Despite Saliba's claims of confusion as to the requirements, the Commission found that Saliba's intentional and numerous violations of the Interim Restrictions over a period of ten months were egregious and warranted a bar to protect the public as it had lost "confidence in Saliba's ability to comply with the rules and regulations applicable to securities professionals." *See Aaron v. SEC*, 446 U.S. 680, 701 (1980); *Krull v. SEC*, 248 F.3d 907, 915 (9th Cir. 2001). The Commission's decision sustaining Saliba's bar was not egregious or oppressive and finds sufficient support in the record; therefore, the Commission did not abuse its discretion. *See* 15 U.S.C. § 78s(e)(2).

## C. The Commission did not abuse its discretion in upholding FINRA's imposition of a bar based on Saliba's admitted violation of FINRA Rule 2010 by backdating firm compliance documents.

Saliba next contends that the Commission abused its discretion in upholding the imposition of a second bar against him for his violation of FINRA Rule 2010 by backdating of firm compliance forms. For this bar, Saliba concedes that his backdating of compliance forms violated FINRA Rule 2010. Saliba's argument as to why the bar is excessive is that the Commission erred in not crediting his testimony and the testimony of his former CCO, Tabizon, that Tabizon had instructed Saliba to backdate the forms after receiving permission from FINRA.

This argument fails because the Commission was required to give deference to FINRA's credibility findings—including its findings that Tabizon and Saliba's accounts were not credible. *Jon R. Butzen*, Exchange Act Release No. 36512, 1995 WL 699189, at *2 & n.7 (Nov. 27, 1995). Furthermore, even accepting their accounts, an industry bar still would not amount to an abuse of discretion as Saliba admitted in his testimony that he knew that backdating the documents was wrong, and yet he proceeded anyway. It was reasonable for the Commission to conclude that this was egregious conduct that warranted a bar to protect the public. The Commission did not abuse its discretion in upholding an industry bar for this conduct.

## CONCLUSION

We deny Saliba's petition for review as to the Commission's decision sustaining two bars. We lack jurisdiction to review the Commission's finding that Saliba

violated FINRA Rules 8210 and 2010 by testifying falsely about and failing to produce his computers.

**Petition for review DENIED in part and DISMISSED in part.**